UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT L. TATUM,

                Plaintiff,

v.                                                  Case No. 25-cv-583-pp

JARED HOY, *et al.*,

                Defendants.

**ORDER DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION
(DKT. NOS. 14, 15)**

      On August 25, 2025, the court denied plaintiff Robert L. Tatum's motion for reconsideration of the court's July 8, 2025 order denying his motion to proceed without prepaying the filing fee because he has accumulated three strikes and because the complaint did not allege that he was in imminent danger of serious physical injury. Dkt. No. 12. The court dismissed the case without prejudice because the plaintiff did not pay the full $405 filing fee, and his deadline to pay it has passed. Id. at 1, 7.

      Since the court dismissed his case, the plaintiff has filed two motions for reconsideration of the August 25 order. Dkt. Nos. 14, 15. In his first motion, the plaintiff states that the August 25, 2025 order "exhibits several 'manifest errors.'" Dkt. No. 14 at 1. The plaintiff first asserts that the court improperly rejected his challenges to the constitutionality of 28 U.S.C. §1915(g). Id. He contends "that obeying the law isn't a priority to the court," accusing all judges on the court of "dispensing tyranny from the bench [and] not justice" and

asserting that the court has committed "serious Fed crimes." Id. at 2. The plaintiff suggests "justice WILL have its laugh last [*sic*]" and that "eventually there will be some 'Luigi Mangione' gunning for you [and] your families." Id. The plaintiff says that he appealed another court's denial of his three-strikes challenges, but that the Seventh Circuit Court of Appeals "refused to hear it," in violation of its own precedent. Id. Finally, the plaintiff asserts that the court disregarded the "'seriousness of injury'" when evaluating whether his complaint satisfied the imminent danger exception in §1915(g). Id. (quoting Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003)). He cites an unpublished Seventh Circuit decision that he says this court should have followed and says that the court should have allowed him to proceed on the imminent-danger exception. Id. He asks the court to reverse its previous order, reinstate his case and allow him to proceed without prepaying the filing fee. Id.

The plaintiff brings his motion under Federal Rule of Civil Procedure 59(e). As the court explained in the August 25, 2025 order, Rule 59(e) "allows a party to move to alter or amend a judgment within twenty-eight days of the entry of judgment." Dkt. No. 12 at 3. The court may grant a motion under Rule 59(e) only if a party can "clearly establish" either newly discovered evidence or a manifest error of law or fact warranting relief. Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (citing Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 n.3 (7th Cir. 2001), and Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard,

misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Relief under Rule 59(e) is an 'extraordinary remed[y] reserved for the exceptional case.'" Vesey v. Envoy Air, Inc., 999 F.3d 456, 463 (7th Cir. 2021) (quoting Gonzalez-Koeneke v. West, 791 F.3d 801, 807 (7th Cir. 2015)).

The plaintiff's first motion does not provide a proper basis for the court to reconsider its previous order. The plaintiff raised several of the same concerns that he had raised in his previous motion for reconsideration, which the court denied in the August 25, 2025 order. The court will not revisit his contentions about precedent or "that the court applied an incorrect standard and should have viewed his allegations in the 'light most favorable to [him] as complainant.'" Dkt. No. 12 at 2 (quoting Dkt. No. 8 at 1). Nor will the court revisit the plaintiff's challenges to the constitutionality of §1915(g). The court explained in its previous order that the plaintiff's "disagree[ments] with the court's conclusions . . . are the basis for an appeal, not for reconsideration." Id. at 4–5 (citing Burney v. Thorn Americas, Inc., 970 F. Supp. 668, 671 (E.D. Wis. 1997) (citing Caisse Nationale De Credit Agricole v. CBI Indus. Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)) ("Appeal, not reconsideration, is the time to deal with the majority of legal errors; therefore, a party may not reargue what the court has already rejected.").

The plaintiff also asserts that the court did not properly consider the seriousness of his injury when determining whether he met the imminent-

danger exception of §1915(g). But the court *did* consider the severity of his injury in the August 25, 2025 order and in the court's July 8, 2025 order denying his motion to proceed without prepaying the filing fee. See Dkt. No. 12 at 4 (quoting Dkt. No. 7 at 4) (noting that the plaintiff "alleged only 'that he aggravated a shoulder injury during this fight,' which ended when he and the cellmate became 'winded' after wrestling 'for a few minutes.'" (internal quotation omitted)).

The plaintiff also accuses the court of violating the law by denying his motion and not allowing him to proceed in this case. He suggests that the court may face violence if it continues to violate federal law. The court advises the plaintiff that it may dismiss any case in which he issues threats or uses hostile and abusive language. See Waivio v. Bd. of Trustees of Univ. of Ill. at Chicago, 290 F. App'x 935, 937 (7th Cir. 2008) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991); Montano v. City of Chi., 535 F.3d 558, 563–64 (7th Cir. 2008); and Ladien v. Astrachan, 128 F.3d 1051, 1057 (7th Cir. 1997)).

The court received the plaintiff's second motion for reconsideration on September 5, 2025. Dkt. No. 15. This motion states that the plaintiff has "newly discovered evidence regarding an active threat of attack" that meets the standard for imminent danger. Id. at 1. He says that on September 1, 2025, Lieutenant Dedering pulled him into a conference room and asked him about activity in his cell hall. Id. He asked if the plaintiff had "been in conflict with anyone," which the plaintiff denied. Id. The lieutenant then allegedly told the plaintiff that his "name came up as to an active threat of an attack planned

against [him] by another inmate," and prison staff "wanted to head it off." Id. He says that Dedering's body camera recorded these events. Id. The plaintiff says that he confirmed the planned attack with another lieutenant and suggested that "this person . . . could have a shank" for use in "a surprise attack that [the plaintiff] can[']t anticipate." Id. The plaintiff confirmed that this attack was not planned against his brother, who has the same last name, and he asked staff to move him to another housing unit for his safety. Id. at 2. He says that Unit Manager Preburg denied this request without explanation. Id.

The plaintiff asserts that he now faces a "real [and] proximate" threat to his health and safety that satisfies the exception in §1915(g). Id. He says that he could not have presented this newly discovered evidence before bringing his complaint or before the court entered its previous rulings. Id. He asserts that these facts are "near identical" to those in Ciarpaglini, where an incarcerated person alleged that prison staff refused "to move [him] to another location after being placed near enemy inmates." Id. He asserts that prison staff have weaponized cell assignments "to spur attacks," which "has culminated in this active threat situation." Id. He says that unspecified staff refused to move him to another cell "because they have an active interest in seeing it carried out." Id.

The plaintiff's second motion to alter or amend the judgment also does not provide a proper basis for the court to reconsider its previous ruling. The plaintiff cites new evidence in the form of discussions he says he had with lieutenants at Green Bay in September 2025—months after he filed his

5

complaint and weeks after the court entered judgment. He asserts that this new information shows that staff is failing to protect him from an imminent attack, which satisfies the exception in §1915(g). But the plaintiff's complaint was not about staff failing to protect him from an imminent attack by an unknown incarcerated person. Instead he alleged that Green Bay staff "conspired to punish the plaintiff for filing numerous past lawsuits and administrative complaints" by intentionally housing him with "'a known enemy' with whom he has 'animosity to the point of physical confrontation.'" Dkt. No. 7 at 3 (quoting Dkt. No. 2 at ¶1). He claims that "Green Bay staff know about the hostility and past confrontation, and he says that 'physical confrontation could occur again at anytime [*sic*].'" Id. (quoting Dkt. No. 2 at ¶2). He further alleges that prison staff "intentionally housed him with this cellmate to create a danger to him." Id. at 4 (citing Dkt. No. 1 at ¶27).

The plaintiff's new allegations are unrelated to his original claim that staff intentionally housed him with a known enemy to cause him harm. Instead he says that staff failed to *protect him* from a possible attack from an *unknown* incarcerated person by denying his request to move to another housing unit. These allegations are not the same, and they do not appear to be related to anyone named in his original complaint. He mentions only two lieutenants who allegedly told him about the threat, and a unit manager who denied his request to move to another cell. None of these persons is named in the complaint, and he does not say that any other prison staff were involved. He also alleges that the lieutenants told him about this alleged threat to stop it from occurring.

That would suggest that prison staff *have* taken measures to protect him from an attack, rather than acting in a way designed to cause him harm from a known source.

If the plaintiff wants to proceed on these new allegations, he must file a new complaint against the proper defendants. Because he has three strikes, he will be required to either pay the full $405 filing fee or to show that his new allegations satisfy the imminent-danger exception in §1915(g). The court reviewing the new complaint would decide whether these new allegations meet that exception. Because the plaintiff's new allegations are not related to the claims in his complaint in this case, this court will not decide whether they meet the exception and will not allow the plaintiff to proceed on these allegations. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2) (explaining that a plaintiff cannot bring *unrelated* claims against different defendants in the same case).

The court **DENIES** the plaintiff's motions for reconsideration. Dkt. Nos. 14, 15. This case remains closed.

Dated in Milwaukee, Wisconsin this 20th day of November, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

7
Case 2:25-cv-00583-PP   Filed 11/20/25   Page 7 of 7   Document 16